UNITED STATES DISTICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CONNIE CARTEAUX, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:18-CV-141-HAB ) |
| ANDREW SAUL, Commissioner of the Social Security Administration[1], | ) ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Connie Carteaux's Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration (ECF No. 17)[2] ("Plaintiff's Brief"), filed on December 13, 2018. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 19) on December 18, 2018. Plaintiff did not file a reply. This matter is now ripe for review.

**A.      Procedural History**

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act on September 16, 2014. Her application was denied initially and on reconsideration. On September 7, 2016, Plaintiff had a hearing on her application before an administrative law judge ("ALJ"). The

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] Plaintiff's original brief was filed on November 6, 2018 at ECF No. 14. The brief referenced in this Opinion and Order is a corrected brief, filed to cure almost two dozen typographical and stylistic errors in the original filing. (*See* ECF No. 15).

ALJ issued her written Decision (R. 17–27) on November 17, 2016, finding that Plaintiff was not disabled.

Plaintiff challenged the ALJ's decision by filing her Request for Review of Hearing Decision/Order with the Appeals Council on December 2, 2016. The Appeals Council issued its Notice of Appeals Council Action on January 5, 2018, denying Plaintiff's Request for Review. Plaintiff then filed her Complaint to Review Decision of Commissioner of Social Security Administration (ECF No. 1) on May 22, 2018.

**B.     Legal Analysis**

**1.     *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2.** *The ALJ's Decision*

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding

whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2014. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: status post aortic valve replacement, nonobstructive coronary artery disease, anomalous coronary artery vessels, hypertension, obesity, and adjustment disorder with mixed anxiety and depression. The ALJ also determined that Plaintiff had the following non-severe impairments: diabetes mellitus, bilateral shoulder problems, gynecological problems (including ovarian cysts and uterine fibroids), colorectal problems (including diverticulitis and colitis), history of cleft palate surgery, insomnia, rhinitis, and urinary tract problems (including a bladder mass, urinary tract infections, and stress incontinence).

At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 21). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except that she is not able to climb ladders, ropes, or scaffolds at all and she can only occasionally climb ramps and stairs, balance, stoop, knees, crouch, and crawl. She is also able to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions, respond appropriately to usual work situations, deal with routine changes in a routine work setting, and respond appropriately to co-workers, supervisors, and the general public.

(R. 23). At step five, the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.

3.  *The RFC*

Plaintiff first claims that the ALJ failed to consider and incorporate all her medically determinable impairments when the ALJ formulated the hypothetical to the vocational expert ("VE") and the RFC. Plaintiff focuses primarily on the ALJ's claimed failure to incorporate concentration, persistence, and pace ("CPP") limitations into the hypothetical and RFC. Relying on *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), Plaintiff argues that remand is necessary.

The problem with Plaintiff's argument is that she does not identify, nor do the medical records support, any CPP limitations that are not reflected in the RFC or hypothetical. The only medical record bearing on Plaintiff's mental health is the consultative examination report of Dan Boen, Ph.D. (R., Ex. 10F). Notably, Dr. Boen reports that Plaintiff, "thinks that her current emotional issues are a result of her heart surgery *and had not contributed to her inability to work in anyway* [sic]." (*Id.* at 665) (emphasis added). Dr. Boen also determined that Plaintiff's mood, affect, thought form, consciousness, concentration, long term memory, fund of information, level of intelligence, and judgment were all normal. (*Id.* at 666). While Dr. Boen did find that Plaintiff's immediate recall, short term memory, and level of insight were "mildly" below normal, Plaintiff does not explain how these findings would support a finding of additional CPP limitations.

The Court is mindful of the fact that limited mental health records do not necessarily indicate a lack of mental health issues. *Kangail v. Barnhart*, 454 F.3d 627, 630–31 (7th Cir. 2006). However, Plaintiff's subjective complaints also fail to establish significant CPP limitations. In the Function Report – Adult (R., Ex. 7E), Plaintiff reports memory problems, but states that she

5

addresses those by taking notes. (*Id*. at 253). Plaintiff's other comments are not out of the ordinary: her attention span depends on the topic being discussed, she doesn't like to read, and she sometimes has questions when she is given spoken instructions. (*Id*.). Plaintiff's husband gives essentially the same evaluation. (*Id*. at 245). During the hearing before the ALJ, Plaintiff was repeatedly prompted by the ALJ to relate any limitations caused by her mental health issues, culminating in the following exchange:

> Q. Okay. All right. So do you feel that it [Plaintiff's inability to work] is because of any mental health concerns or symptoms?
>
> A. I don't know. I don't know if it's mental. I don't know. I just – I just felt different since my heart surgery. I used to be a hard worker, and it was hard for me.

(*Id*. at 44). The Court finds this exchange indicative of the record and finds that no additional CPP limitations are demonstrated.

Plaintiff also complains that the ALJ failed to consider her physical limitations in formulating the RFC. However, in making this argument, Plaintiff does not point to a single medical record, instead relying entirely on her hearing testimony regarding weakness in her legs. (ECF No. 17 at 14). While the lack of medical corroboration is not fatal to a claimant's subjective claims of limitations, *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014), here the medical records are sufficient to support the ALJ's credibility determination. As the ALJ notes, Plaintiff has not used an assistive device for ambulation or balance for any 12-month period since the date of onset, demonstrates no evidence of muscle atrophy, and has demonstrated largely normal muscle strength throughout her medical records. (R. 24). The ALJ's credibility determination is entitled to special deference, and the Court concludes that the ALJ's determination in this case is neither unreasonable nor unsupported such that the determination should be disturbed. *McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 878 (N.D. Ill. 2018).

The Court would also note that Plaintiff exaggerates the scope of work the RFC indicates that she can perform. According to Plaintiff, the RFC would require her to "stand at a full-time job for most of the day." (ECF No. 17 at 14). This is not what "light work" requires. A job falls into the light work category when "it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.*[3]" 20 C.F.R. § 404.1567(b). Because Plaintiff offers no explanation why she could not perform a job that involves sitting most of the time, the Court finds the RFC's reference to light work appropriate.

**4.** *ADLs*

Relying primarily on *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), Plaintiff argues that the ALJ overemphasized her ability to perform activities of daily living ("ADLs") in determining that she was not disabled. *Bjornson* cautions that ALJs must recognize "the crucial differences between activities of dialing living and activities in a full-time job" when using ADLs to evaluate a claimant's credibility. *Id*. at 647. Plaintiff argues that the ALJ's list of ADLs that Plaintiff can perform is not "incongruent" with an inability to work, and further argues that the ALJ failed to recognize her difficulty in performing ADLs.

Plaintiff's argument puts the ALJ in a no-win situation. ALJs are required by statute to consider a claimant's ability to perform ADLs in evaluating "the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work." 20 C.F.R. § 404.1529(c)(3)(i); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Yet, under *Bjornson*, the ALJ must not put too much emphasis on ADLs. What the ALJ is left to do, then, is to walk a narrow and undefined line in which she risks remand if her evaluation wanders into emphasis.

---

[3] Plaintiff also criticizes the ALJ for failing to include hand restrictions (ECF No. 17 at 14), but points to no evidence in the record, subjective or objective, that would support such restrictions.

7

The Court concludes that the ALJ has successfully walked that line here. ADLs are mentioned only twice in the eleven-page Decision. (R. 22, 24). They were cited not to show that Plaintiff could not work, but instead were appropriately considered in the context of evaluating Plaintiff's subjective complaint. (*Id.*). Whatever weight was given to the ADLs were more than overcome by the medical evidence cited throughout the rest of the Decision. The Court concludes that the ALJ's consideration of Plaintiff's ADLs was appropriate.

Further, the Court concludes that Plaintiff's claim that the ALJ "does not acknowledge important details of performance-level" in the ADLs to be without merit. As even Plaintiff recognizes, the ALJ expressly notes that Plaintiff needs help getting dressed, she needs reminders to take her medications properly, she uses a bath chair and walker, that she gets tired easily, and that she has difficulty sleeping. (R. 23). While this may not have been a complete run-down of all of Plaintiff's claimed difficulties, the ALJ was not required to discuss every bit of evidence Plaintiff put forward. *Dixon*, 270 F.3d at 1176. Instead, she needed only to confront contradictory evidence and explain why it was rejected. *Indoranto*, 374 F.3d at 474. The Court finds that the ALJ succeeded in this task.

**5.**  *Credibility Analysis*

In an underdeveloped argument, Plaintiff asserts that the ALJ failed "to give specific reasons for a credibility findings, supported by substantial evidence." (ECF No. 17 at 17). The Court finds this argument wholly without merit. Pages 8 and 9 of the Decision are nothing other than specific reasons for the ALJ's credibility assessment, supported by citations to the Record. (R. 24–25). Plaintiff makes no specific challenges to any of the ALJ's reasons, or the evidence relied upon. The Court rejects Plaintiff's argument and finds the ALJ's credibility analysis to be legally sufficient.

**6.**     *Discounting Medical Evidence*

Plaintiff next argues that the ALJ failed to consider the opinions of Andrew Misner, DPT. Again, this argument is without merit. Misner's records are collected in the Record at Exhibit 21F. Those records are expressly referenced by the ALJ in the Decision. (R. 20). Plaintiff may disagree with the way Misner's records were weighed, but it is simply incorrect to state that those records were ignored.

Plaintiff also complains that the ALJ discredited a note in Dr. Jan's records regarding Plaintiff's weakness by observing that the record was a recitation of Plaintiff's subjective complaints. But that's what it is! The record reads, in relevant part, "Plaintiff *states* that she is unable to push, pull, or lift heavy things because she is afraid she will hurt herself." (R. 663) (emphasis added). Plaintiff states that Dr. Jan "would have been applying his medical judgment to the person he examined" (ECF No. 17 at 18), but the record is clear that it is not a statement of medical judgment but instead a transcription of Plaintiff's statements. The Court will not remand this case on the grounds that the ALJ has properly described a record.

**7.**     *Use of the Equal Distribution Methodology*

Finally, Plaintiff argues that the VE's use of the equal distribution methodology requires remand. As described by the Northern District of Indiana, the equal distribution methodology requires a VE to "divide the total number of jobs in the broader category by the number of job titles in that category" to determine the number of individual jobs available. *Jentzen v. Colvin*, 2016 WL 8672692, *4 (N.D. Ind. March 18, 2016). Relying on *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015), Plaintiff appears to argue that the use of this methodology is *per se* flawed and requires remand.

As the Commissioner points out, this is a misstatement of law. In *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018), the Seventh Circuit recognized that "VEs cannot be expected to formulate opinions with more confidence than imperfect data allows. Nor is it our place to enjoin use of the equal distribution method." *Id.* at 970. While the court in *Chavez* found that the VE's testimony in that case required remand, it went on to say that the VE's testimony could have been sufficient if he had "drawn on his past experience with the equal distribution method, knowledge of national or local job markets, or practical learning from assisting people with locating jobs throughout the region, to offer an informed view on the reasonableness of his estimates." *Id*. at 969.

The VE's testimony here mirrors the suggested testimony in *Chavez*. Aside from the statistical sources enumerated in his testimony, the VE repeatedly noted that his opinions were based upon his twenty years of experience "actually observing these jobs being performed and actually placing individuals into these positions." (R. 68–69). The VE, then, provided a "reasonable and principled basis for accepting the job-number estimates." *Chavez*, 895 F.3d at 969. The Court finds that the ALJ did not err in relying on the VE's job estimate numbers, and that there is no basis to remand on these grounds.

**C.     Conclusion**

For the foregoing reasons, the Decision is AFFIRMED.

SO ORDERED on September 26, 2019.

      s/ *Holly A. Brady*
      JUDGE HOLLY A. BRADY
      UNITED STATES DISTRICT COURT